UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARIA CASTILLO,

|                | Plaintiff, | **REPORT AND RECOMMENDATION** |
|----------------|-----------|-------------------------------|
| -against-      |           | 22-CV-203-LDH-SJB             |

CHAPINES LLC and MANUEL SINCHI,

Defendants.
------------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

On January 13, 2022, Plaintiff Maria Castillo ("Castillo") brought this action on behalf of herself against Chapines LLC ("Chapines") and Manuel Sinchi ("Sinchi") (collectively, "Defendants"), alleging claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 160–199. (Second Am. Compl. dated Jan. 31, 2023 ("SAC"), Dkt. No. 20). On August 9, 2023, Castillo moved for a default judgment against Defendants. (Mot. for Default J. dated Aug. 9, 2023 ("Default J. Mot."), Dkt. No. 29). For the reasons stated below, it is respectfully recommended that the motion be granted, as indicated herein.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Chapines is a New York limited liability company with its principal place of business in Jamaica, Queens. (SAC ¶¶ 7, 10). Sinchi is the owner and operator of Chapines, who manages the day-to-day operations of the business and has final power and authority over all personnel decisions. (*Id.* ¶ 8). Castillo was employed as a cook and server by Defendants from June 26, 2016 to November 6, 2021. (*Id.* ¶ 11). Under Sinchi's management, she was responsible for cooking and preparing food, and serving customers. (*Id.* ¶ 12). While she worked for Defendants, Castillo routinely worked six

days each week, from 2:00 P.M. to 11:00 P.M., for 9 hours per day and for a total of 54 hours each week. (*Id.* ¶ 13). Defendants paid Castillo a weekly wage of $450, regardless of the number of hours she worked. (*Id.* ¶¶ 14–15). Defendants did not pay Castillo overtime wages. (SAC ¶¶ 14–15). In addition, Castillo alleges that Defendants failed to follow various state notice and record-keeping requirements, as required by the Wage Theft Prevention Act. (*Id.* ¶¶ 17–18, 40–47).

Castillo commenced this action on January 13, 2022. (Compl. dated Jan. 13, 2022 ("Compl."), Dkt. No. 1). After Defendants failed to appear, and the Clerk entered default against them, (Clerk's Entry of Default dated June 27, 2022, Dkt. No. 12), Castillo moved for default judgment. (First Mot. for Default J. dated Nov. 7, 2022, Dkt. No. 14). However, Magistrate Judge Roanne L. Mann denied the motion without prejudice for failure to comply with Local Civil Rule 55.2 and the Servicemembers Civil Relief Act. (Mem. and Order dated Nov. 28, 2022 ("First Default J. Order"), Dkt. No. 15 at 3–5). Castillo then filed the operative pleading, the Second Amended Complaint, on January 31, 2023. (SAC). She alleges five causes of action in the Second Amended Complaint: (1) failure to pay overtime compensation under FLSA; (2) failure to pay overtime wages under NYLL; (3) failure to pay minimum wage under NYLL; (4) failure to provide wage statements under NYLL § 195(3); and (5) failure to provide a wage notice under NYLL § 195(1). (*Id.* ¶¶ 21–47).

Chapines was served with a summons and a copy of the Second Amended Complaint via the Secretary of State on April 20, 2023. (Summons Returned Executed dated Apr. 20, 2023, Dkt. No. 26). Sinchi was served with a summons and the Second Amended Complaint pursuant to N.Y. C.P.L.R. § 308(2) at his place of business on March 9, 2023. (Summons Returned Executed dated Mar. 10, 2023, Dkt. No. 23). The

process server attested to leaving the summons and Second Amended Complaint with a "Jane Doe," who refused to provide her name. (*Id.*). The Affidavit of Service averred that this person was a "general agent" of the business. (*Id.*). On March 10, 2023, within 20 days of this service, Plaintiff's process server mailed a copy of the summons and Second Amended Complaint through the U.S. Postal Service to Sinchi's place of business. (*Id.*).

Defendants failed to appear, answer, or otherwise respond to the Second Amended Complaint. Castillo sought a certificate of default against both Defendants, (Req. for Certificate of Default dated June 6, 2023, Dkt. No. 27), which the Clerk of Court granted. (Clerk's Entry of Default dated June 12, 2023 ("Clerk's Entry of Default"), Dkt. No. 28). On August 9, 2023, Castillo filed her renewed motion for default judgment against both Defendants. (Default J. Mot.).[1]

Castillo seeks recovery of: (1) $20,682.86 in unpaid wages; (2) $78,806.00 in unpaid overtime wages; (3) $97,488.86 in liquidated damages; (4) $5,000 in penalties for not receiving required wage statements; and (6) $5,000 in penalties for not receiving required wage notices. (Pl.'s Damages Calculations ("Pl.'s Damages"), attached as Ex. 6 to Default J. Mot., Dkt. No. 29-8). She seeks pre-judgment interest in the amount of $24.04 per day starting on March 2, 2019. (Mem. of Law in Supp. of Mot. for Default J. dated Aug. 9, 2023 ("Mem. of Law"), Dkt. No. 29-1 at 19). Castillo also seeks

---

[1] The Court issued an order on December 13, 2023, due to Castillo's apparent failure to mail all the default judgment papers to the Defendants, as required by Local Civil Rule 55.2(c), or file proof of mailing on the docket. (Order dated Dec. 13, 2023). In response, Castillo filed proof of service of her motion for default judgment and supporting papers to both Chapines and Sinchi via Priority Mail on December 22, 2023. (Decl. of Proof of Service dated Dec. 27, 2023, Dkt. No. 30 at 1). No opposition to the motion was filed by either defendant.

reimbursement for attorney's fees in the amount of $14,800.88 and costs in the amount of $992.41.  (*Id.* at 24).

DISCUSSION

I.   <u>Entry of Default</u>

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant.  Fed. R. Civ. P. 55(b)(2).  The Clerk of Court entered a default against Chapines and Sinchi on June 12, 2023.  (Clerk's Entry of Default).

The next question, before reaching liability or damages, is whether Defendants' conduct is sufficient to warrant entry of a default judgment.  In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001).  These factors are "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, Defendants' failure to respond to the Complaint demonstrates their default was willful. *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that the defendants' non-appearance and failure to respond "indicate willful conduct" and granting plaintiff default judgment against them). They were properly served with the summons and Second Amended Complaint. (Summons Returned Executed dated March 10, 2023, Dkt. No. 23; Summons Returned Executed dated Apr. 20, 2023, Dkt. No. 26). The motion for default judgment and supporting papers were also served via mail to Defendants' last known business address. (Decl. of Proof of Service dated Dec. 27, 2023, Dkt. No. 30). Notwithstanding this notice and service, Defendants did not respond to the Second Amended Complaint, did not appear, and have not in any way attempted to defend themselves. *See, e.g.*, *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) ("Defendant has not responded to Plaintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way. Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

Second, the Court cannot conclude there is any meritorious defense to Castillo's allegations because Defendants did not appear, and no defense has been presented to the Court. *E.g.*, *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1.

Third, Castillo would be prejudiced if the motion for default judgment were denied, "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2

(S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Order (Jan. 26, 2009); *Sola Franchise Corp.*, 2015 WL 1299259, at *15 (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims").

As a result, all three factors weigh in favor of the entry of default judgment. The Court now turns to the liability imposed, damages, and other relief to be awarded.

II.     Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in [her] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Laby's Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation) (citation and quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (4th ed. 2022) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." (footnote omitted)). "[T]he court must accept all well-pleaded

allegations in the complaint as true, except those pertaining to the amount of damages." *Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 675 (S.D.N.Y. 2011) (first citing Fed. R. Civ. P. 8(b)(6); and then citing *Romanowicz*, 577 F.3d at 83 n.6).

As discussed below, the Court respectfully recommends that Defendants be found liable for violations of the minimum wage provisions of NYLL, the overtime provisions of FLSA and NYLL, and the notice and record-keeping requirements and wage statement provisions of the Wage Theft Prevention Act.

A. FLSA Coverage

Employers are subject to FLSA when their employees are either "engaged in commerce or in the production of goods for commerce" ("individual coverage") or "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage"). 29 U.S.C. §§ 206(a), 207(a)(1); *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009). *See generally Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 295 n.8 (1985). "[T]o properly allege individual or enterprise coverage, [plaintiff] need not do much. Aside from stating the nature of his work and the nature of [his employer's] business, he must provide only straightforward allegations connecting that work to interstate commerce." *Sciacca v. Vectorworks Marine, LLC*, No. 12-CV-1255, 2013 WL 656325, at *4 (M.D. Fla. Feb. 1, 2013) (second and third alterations in original), *report and recommendation adopted*, 2013 WL 655402, at *1 (Feb. 22, 2013); *see also Santacruz v. Blok Chocolatier LLC*, No. 19-CV-544, 2021 WL 4341103, at *3 (E.D.N.Y. June 23, 2021), *report and recommendation adopted*, 2021 WL 4340963, at *1 (Sept. 23, 2021).

The Court finds that Castillo has provided the factual detail necessary to support a finding that Defendants are engaged in interstate commerce and thus subject to

FLSA.[2]  "Defendant Sinchi was and is Chapines's owner," and Chapines owns and operates a "bakery and restaurant located in Jamaica, New York."  (SAC ¶¶ 8, 10). Castillo was employed as a cook and server by Defendants.  (*Id.* ¶ 11).  Castillo attests that Chapines bought and sold products, including "meat, produce, beverages, and other food items," from outside of New York State.  (*Id.* ¶ 9; Decl. of Maria Castillo dated June 13, 2023 ("Castillo Decl."), Dkt. No. 29-12 ¶ 8).

The handling of items that have "undoubtedly moved in interstate commerce" is sufficient to allege enterprise coverage.  *See Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) ("[L]ocal business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce."); *see also Juarez v. Wheels Pizza Inc.*, No. 13-CV-261, 2015 WL 3971732, at *2 n.3 (S.D.N.Y. June 30, 2015) (finding plaintiff's allegations that he handled goods such as drinks and other supplies that were produced out-of-state to be sufficient to establish that his employer, a pizza stand, was engaged in interstate commerce); *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *13 (E.D.N.Y. June 18, 2013) ("[I]t is inconceivable that none of the trucks or other materials used by Plaintiffs in their line of work originated outside of New York.").[3]

---

[2] Castillo has not alleged that she was personally engaged in commerce or in the production of goods for commerce.  She concedes that individual coverage does not exist.  (Mem. of Law at 7 n.1).

[3] Castillo attests that Chapines's "qualifying annual business exceeded and exceeds $500,000.00."  (SAC ¶ 9).  This is sufficient on default.  *See, e.g.*, *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695, 2015 WL 1529653, at *3 (E.D.N.Y. Mar. 31, 2015) (adopting report and recommendation).

B.  NYLL Unpaid Minimum Wages Claim

Castillo alleges that Defendants failed to pay her the required minimum hourly rate under NYLL.  In 2016, the general minimum wage rate for all of New York state was $9.00 per hour.  *See History of the Minimum Wage in New York State*, N.Y. State Dep't of Lab., https://dol.ny.gov/history-minimum-wage-new-york-state (last visited Feb. 15, 2024).  The minimum wage rate for New York City employers with ten or fewer employees thereafter increased yearly: $10.50 per hour in 2017; $12.00 per hour in 2018; $13.50 per hour in 2019; and between December 31, 2019 and January 1, 2024, $15.00 per hour.  *Id.*; NYLL § 652(1)(a); (*see also* Mem. of Law at 12).[4]  When Castillo worked for Defendants, she was paid at a rate of $450 per week.  (SAC ¶ 14).  She regularly worked over 54 hours per week, and thus, her effective hourly rate of pay was $11.25 per hour.  (*See id.* ¶ 13; Pl.'s Damages).[5]  For Castillo's hours worked in 2016 and 2017, she was paid above the applicable minimum wage set by New York City under NYLL ($9.00 per hour and $10.50 per hour, respectively).  However, for her hours worked between January 1, 2018 and November 6, 2021, she was paid below the applicable minimum wage.  (Pl.'s Damages).  The Court thus finds the Defendants liable for minimum wage violations under NYLL.

C.  Overtime Wages Claims

Castillo alleges that Defendants violated the overtime provisions of both FLSA and the NYLL.  The Court finds that she has established liability under both statutes.

---

[4] The Second Amended Complaint alleges that Defendants had two or more employees while Castillo was employed by them.  (SAC ¶ 9; Castillo Decl. ¶ 8).

[5] The Second Amended Complaint alleges that her $450 weekly payment was "intended to compensate Plaintiff for only her first forty hours of work each week." (SAC ¶ 14).  $450 / 40 = $11.25 per hour.

### 1.  FLSA Overtime Claim

FLSA's overtime wage requirement provides that an employee working "in excess of" 40 hours in a given workweek be compensated for that "excess work 'at a rate not less than one and one-half times the regular rate at which he is employed[.]'"[6]  *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)).  A plaintiff "must allege overtime without compensation in a 'given' workweek," and not "an all-purpose pleading template alleging overtime in 'some or all workweeks.'"  *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (citing *Lundy*, 711 F.3d at 114).  Nor is it acceptable for a plaintiff to just track "the statutory language of the FLSA . . .[,] alleging no particular facts sufficient to raise a plausible inference of an FLSA overtime violation."  *Id.* at 89.  Rather, a plaintiff must "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."  *Nakahata v. N.Y.-Presbyterian Healthcare Sys. Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).  Only with such factual context will a plaintiff's overtime claim move from merely "conceivable to plausible" and thereby survive a motion to dismiss.  *Dejesus*, 726 F.3d at 90 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Second Amended Complaint states that Castillo worked more than 40 hours each week for Defendants: from June 26, 2016 to November 6, 2021, she worked 9 hours per day, from 2:00 P.M. to 11:00 P.M., six days per week, for a total of 54 hours

---

[6] In other words, under FLSA, unpaid overtime wages are calculated by first determining the employee's regular hourly rate, and then multiplying that number by 1.5.  The regular hourly rate is determined by "dividing the salary by the number of hours which the salary is intended to compensate," 29 C.F.R. § 778.113(a), or the applicable minimum wage if the regular rate falls below the applicable minimum.  *Id.* § 778.5.

each week.  (SAC ¶ 13).  Castillo was not paid at a wage rate of time and a half for her hours regularly worked in excess of 40 hours per week.  (*Id.* ¶¶ 14–15; Castillo Decl. ¶ 12).  Castillo's claims include the necessary factual allegations to state a FLSA overtime violation.  Based on these undisputed allegations, the Court finds that Defendants are liable for violations of FLSA's overtime provisions.

### 2.  NYLL Overtime Claim

Defendants failed to pay Castillo the required overtime hourly rate under NYLL. NYLL's overtime provision specifies that eight hours constitutes a "legal day's work," NYLL § 160(3), and that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate."  12 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 12, § 142-2.2.  Castillo alleges that she worked from 2:00 P.M. to 11:00 P.M., six days a week, totaling 54 hours each week.  (SAC ¶ 13).  The Second Amended Complaint alleges that Defendants did not pay Castillo the required overtime hourly wage.  (*Id.* ¶¶ 14–15).  In light of this allegation, as well the fact that her flat weekly salary meant that she was paid nothing for her work over 40 hours, *supra* at pp. 10, Defendants are liable for unpaid overtime under NYLL.

### D.  Wage Theft Prevention Act Claims

New York's Wage Theft Prevention Act ("WTPA") requires employers to provide written wage notice "within 10 business days of his first day of employment." *Hernandez v. JRPAC Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *29 (S.D.N.Y. June 9, 2016).

> [E]mployers [must] provide their employees a written notice with the following information: (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any "doing business as" names used

by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.

*Id.* (first quoting *Salinas*, 123 F. Supp. 3d at 474; and then citing NYLL § 195(1)(a)).  The written notice must be "in writing in English and in the language identified by each employee as the primary language of such employee."  NYLL § 195(1)(a).  The WTPA also requires that employers provide employees wage statements "with every payment of wages" that contain, among other things, the dates of work covered by the statement, the rate of pay, and gross and net wages paid.  *Id.* § 195(3).

The Second Amended Complaint alleges that Defendants never provided Castillo with a wage notice.  (SAC ¶¶ 3, 18, 46).  She was also never provided an accurate wage statement with each payment, as required by the WTPA.  (*Id.* ¶¶ 3, 17, 42).  Accordingly, Castillo has sufficiently established liability on these claims.  *See Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028, 2018 WL 1770660, at *8 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, 2018 WL 1770555, at *2 (Apr. 12, 2018).

III.  <u>Damages</u>

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  *Greyhound Exhibitgroup*, 973 F.2d at 158.  "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded."  *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations and citations omitted), *report and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012).  "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty."

*Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases).

That being said, because under FLSA "[t]he burden is on an employer properly to record hours," a "plaintiff need not compute FLSA damages with precision." *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 20–21 (2d Cir. 2002). An employee may meet her burden of showing the amount and extent of her hours worked through her own recollection. *See Pineda*, 831 F. Supp. at 674. As such, "[i]n a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009) (collecting cases), *report and recommendation adopted*, 2009 WL 513371, at *1 (Feb. 27, 2009); *see also McLean v. Wayside Outreach Dev. Inc.*, 624 F. App'x 44, 45 (2d Cir. 2015) (holding that district court did not abuse its discretion by failing to hold a hearing to determine damages where the court relied on "a single affidavit only partially based upon real numbers" (citations omitted)).

A. Unpaid Minimum Wages

NYLL requires that a plaintiff be paid at or above the minimum wage rate. *See* NYLL § 652(1)(a). Between 2018 and 2021, Castillo was paid below the applicable New

York State minimum wage.  The Court's calculations of Castillo's unpaid minimum

wages are set out below.

| Time Period | Hourly Wage Paid to Plaintiff | Minimum Wage Under NYLL | Unpaid Minimum Wage Per Hour | Regular Hours Worked Per Week | Weeks Worked | Total Unpaid Minimum Wage Under NYLL |
|---|---|---|---|---|---|---|
| 2018 | $11.25 | $12.00 | $0.75 | 40 | 52 | $1,560.00 |
| 2019 | $11.25 | $13.50 | $2.25 | 40 | 52 | $4,680.00 |
| 2020 | $11.25 | $15.00 | $3.75 | 40 | 52 | $7,800.00 |
| 2021 | $11.25 | $15.00 | $3.75 | 40 | 44 | $6,600.00 |
|  |  |  |  |  | TOTAL | $20,640.00 |

The Court recommends that Castillo be awarded $20,640.00 in unpaid minimum

wages.[7]

B. Unpaid Overtime Wages

Both federal and state law require that employers pay employees a 50% premium

for their overtime hours—that is, the hours in excess of 40 that they have worked in each

work week.  29 C.F.R. § 778.105; N.Y.C.R.R. tit. 12, § 146-1.4.  Although Defendants are

liable under both FLSA and NYLL for failing to pay Castillo's overtime wages, Castillo

cannot recover unpaid overtime compensation under both statutes for any period of

overlapping work.  *See Pinzon v. Paul Lent Mech. Sys. Inc.*, No. 11-CV-3384, 2012 WL

4174725, at *3 (E.D.N.Y. Aug. 21, 2012) (holding that a plaintiff may "not double dip" or

obtain a "double recovery" of unpaid overtime wages under FLSA and the NYLL), *report

and recommendation adopted*, 2012 WL 4174410, at *1 (Sept. 19, 2012).  "If a plaintiff is

entitled to damages under both federal and state wage law, the Court has discretion to

award [that plaintiff] damages under the statute providing the greatest amount of

---

[7] Castillo requests $20,682.86 in damages for her unpaid minimum wages in her Damages Calculations.  (Pl.'s Damages).  This number is higher than the Court's calculations by $42.86.  Castillo provides no explanation for these extra wages.

relief." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) (alteration in original) (quotations omitted), *aff'd*, 752 F. App'x 33, 37 (2d Cir. 2018).

As explained herein, the Court recommends Castillo be awarded recovery for unpaid overtime wages of $76,755.28.[8]

To calculate the sum of unpaid overtime, the Court must first calculate the regular rate of pay. For employees compensated on a "weekly salary basis" like Castillo, the "regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a). "[T]here is a rebuttable presumption that a weekly salary covers 40 hours[.]" *Shen v. GJ Grp. USA Inc.*, No. 19-CV-2212, 2021 WL 8317105, at *9 (E.D.N.Y. Sept. 8, 2021) (quotations omitted), *report and recommendation adopted*, Order (Sept. 28, 2021). "The employer can rebut the presumption by showing an employer-employee agreement that the salary cover[s] a different number of hours." *Id.* (alteration in original) (quotations omitted). By virtue of their default, Defendants have failed to rebut the presumption that the weekly salary was for 40 hours of work. *See, e.g.*, *Brito v. ATA Freight Line, Ltd.*, No. 20-CV-3132, 2021 WL 7830146, at *8 (E.D.N.Y. Aug. 24, 2021) (applying the FLSA presumption on default); *Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12-CV-9353, 2015 WL 1881080, at *2 (S.D.N.Y. Apr. 24, 2015) (finding defendants failed to rebut the presumption because "the record [was] completely devoid of any evidence of an agreement or understanding between Plaintiffs and Defendants regarding what the weekly salary was intended to cover").

---

[8] While the typical practice is to calculate the award under both statutes and award the higher, here, Castillo only conducted calculations for one award for overtime wages, thereby conceding that the award is the same under both. (Pl.'s Damages; Mem. of Law at 16–17).

Castillo alleges, in the Second Amended Complaint and her Damages Calculations, that she worked 54 hours per week throughout her employment, of which 14 hours would constitute overtime.  (SAC ¶ 13; Pl.'s Damages).  Castillo's regular rate of pay between June 26, 2016 and January 1, 2018 was $11.25 per hour ($450/40); her regular rate of pay for 2018 was $12.00 per hour; for 2019, it was $13.50 per hour; and for 2020 and 2021, it was $15.00 per hour.  (*See* Pl.'s Damages).[9]

The overtime hourly rate is 1.5 times the hourly rate, which results in Castillo being owed $16.88 for each overtime hour worked between June 26, 2016 and January 1, 2018; $18.00 for each overtime hour worked between in 2018; $20.25 for each overtime hour worked in 2019; and $22.50 for each overtime hour worked in 2020 and 2021.  The Court's calculations are set out below.

| | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | Total |
|---|---|---|---|---|---|---|---|
| **Hours Per Week** | 54 | 54 | 54 | 54 | 54 | 54 | |
| **Weekly Salary** | $450.00 | $450.00 | $450.00 | $450.00 | $450.00 | $450.00 | |
| **NYLL Regular Hourly Rate** | $11.25 | $11.25 | $12.00 | $13.50 | $15.00 | $15.00 | |
| **NYLL Overtime Rate** | $16.88 | $16.88 | $18.00 | $20.25 | $22.50 | $22.50 | |
| **Weekly Overtime Hours** | 14 | 14 | 14 | 14 | 14 | 14 | |
| **Weekly Overtime Wages Owed** | $236.32 | $236.32 | $252.00 | $283.50 | $315.00 | $315.00 | |
| **Weeks Worked** | 27 | 52 | 52 | 52 | 52 | 44 | |
| **Total Overtime Wages Owed** | $6,380.64 | $12,288.64 | $13,104.00 | $14,742.00 | $16,380.00 | $13,860.00 | $76,755.28 |

The Court thus recommends that Castillo be awarded the amount of $76,755.28 in unpaid overtime damages.[10]

---

[9] Because Castillo's regular rate of pay for 2016 and 2017 was higher than the applicable New York City minimum wage, her overtime rate is calculated using that rate ($11.25 per hour).  *See* N.Y.C.R.R. tit. 12, § 146-1.4; 29 C.F.R. § 778.113(a).  However, between 2018 and 2021, her regular rate of pay was lower than the applicable New York City minimum wage, and thus, her overtime rate is calculated based on the minimum wage rates.  *See supra* at pp. 9; *see also* 29 C.F.R. § 778.5.

[10] Castillo requests $76,806.00 in damages for her unpaid overtime wages in her Damages Calculations.  (Pl.'s Damages; Mem. of Law at 17)  This number is higher than the Court's calculations.

### C.  Liquidated Damages

Castillo seeks liquidated damages under NYLL.  (Mem. of Law at 17).

An employee can recover liquidated damages under NYLL "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."  NYLL § 198(1-a).  For all NYLL claims that accrued on or after April 9, 2011, an employer is liable for liquidated damages equal to one hundred percent of the total amount of wages found to be due.  *Id.* § 663(1).

In light of the default by Defendants, there has been no showing that they acted in good faith or that the Court should exercise its discretion to deny liquidated damages. *See Brock v. Wiliamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) (noting that employer bears burden of establishing good faith defense under § 260 through "plain and substantial evidence"); *Khan v. IBI Armored Servs.*, Inc., 474 F. Supp. 2d 448, 459 (E.D.N.Y. 2007) ("Simply put, double damages are the norm, single damages the exception, the burden on the employer." (quotations and citation omitted)); *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234, 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 6879258, at *1 (Nov. 21, 2016). Therefore, the Court recommends that liquidated damages be awarded under NYLL.

Based on the recommendation that Castillo be awarded $20,640.00 in unpaid minimum wages and $76,755.28 in unpaid overtime wages, the Court recommends that Sanchez Flores be awarded $97,395.28 in liquidated damages.

### D.  Wage Theft Prevention Act Damages

Castillo worked for Defendants for almost six years.  (SAC ¶ 11).  For the wage notice claim, she is entitled to recover $50 per day up to a maximum of $5,000.  NYLL § 198(1-b).  For the wage statement claim, she is entitled to recover $250 per day up to a

maximum of $5,000.  *Id.* § 198(1-d).  Because Castillo never received a wage notice or wage statements from Defendants, and because Castillo worked for Defendants for well over 100 days, she is entitled to the statutory maximum of $5,000 under each provision. *E.g.*, *Diaz v. KC Plumbing, LLC*, No. 19-CV-4321, 2021 WL 7500316, at *9 (E.D.N.Y. Mar. 1, 2021), *report and recommendation adopted*, Order (Mar. 23, 2021); *De Los Santos v. Marte Constr., Inc.*, No. 18-CV-10748, 2020 WL 8549054, at *8 (S.D.N.Y. Nov. 25, 2020), *report and recommendation adopted*, 2020 WL 8549055, at *2 (Dec. 17, 2020).  Therefore, Castillo should be awarded a total of $10,000 in WTPA damages.

E.  Pre-Judgment Interest

Castillo also seeks pre-judgment interest.  (Mem. of Law at 19).  "NYLL permits the award of both liquidated damages and pre-judgment interest."  *Fermin v. Las Delicias Peruanas Rest., Inc*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015).[11]  Castillo is entitled to an award of pre-judgment interest on her NYLL damages at a rate of 9% per year. N.Y. C.P.L.R. § 5004.  Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date."  *Id.* § 5001(b); *Coulibaly v. Millennium Super Car Wash, Inc.*, No. 12-CV-4760, 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013) (adopting report and recommendation). Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest.  *See Fermin*, 93 F. Supp. 3d at 49 ("Courts applying N.Y. CPLR § 5001 have wide discretion in determining a reasonable date from which to award pre-

---

[11] Pre-judgment interest is calculated based on the unpaid wages due under NYLL only, not on liquidated damages.  And pre-judgment interest is not available for violations of the wage statement or wage notice provisions of NYLL.  *See Jin Li v. W. Metal Work & Supply, Inc.*, No. 17-CV-1015, 2019 WL 2436275, at *6 n.7 (E.D.N.Y. Feb. 27, 2019), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 56849, at *1 (Mar. 29, 2019).

judgment interest[.]" (quotations omitted)).  The most commonly used intermediate date is the "median date between the earliest ascertainable date the cause of action existed and the date the action was filed. . . ."  *See, e.g.*, *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012) (collecting cases).

Castillo began to work for Defendants on June 26, 2016, and ended her employment on November 6, 2021.  (SAC ¶ 11).  The original Complaint was filed on January 13, 2022.  (Compl.).  There are 2,027 days, or about 289 weeks, between these dates.  Half of 2,027 is 1,014; 1,014 days from June 26, 2016 is April 6, 2019.  The Court recommends that pre-judgment interest be awarded by the Clerk of Court in a daily amount of $24.02 per day from April 6, 2019, until the date final judgment is entered.[12]

F.  Post-Judgment Interest

Castillo also requests post-judgment interest pursuant to NYLL § 198(4) and 28 U.S.C. § 1961.  (SAC Prayer for Relief (g); Mem. of Law at 15–16, 25).  "The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."  *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (quoting 28 U.S.C. § 1961(a)).  The Court therefore recommends a post-judgment interest award on the total damages, at the rate set forth in 28 U.S.C. § 1961, calculated from the date on which the Clerk of Court enters judgment until the date of payment.  *See Fermin*, 93 F. Supp. 3d at 53 (listing cases and awarding post-judgment interest in FLSA cases).

---

[12] The total amount ($97,395.28) at nine percent annually results in approximately $8,765.58 per year in interest, or $24.02 per day (rounded) based on 365 days per calendar year.

IV.    Attorney's Fees and Costs

It is well-settled that FLSA and NYLL provide for an award of reasonable attorney's fees and costs to a prevailing plaintiff. *See* 29 U.S.C. § 216(b) ("The court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); NYLL § 198(1-a) ("In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover . . . all reasonable attorney's fees[.]"). By virtue of the entry of default judgment, Castillo is a prevailing Plaintiff. The "starting point" for determining the amount of attorney's fees to be paid by Defendants is calculation of the "lodestar," which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by examining what reasonable clients would be willing to pay. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. *Id.* The next step is to determine the reasonableness of the hours expended by counsel. *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 U.S. Dist. LEXIS 125161, at *9 (E.D.N.Y. Feb. 26, 2008), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 21770, at *3 (Mar. 17, 2008). The number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary. *See, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (citing

20

*Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)) (adopting report and recommendation). "District courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Finkel v. Captre Elec. Supply Co*., No. 14-CV-3584, 2015 WL 5316257, at *5 (E.D.N.Y. July 31, 2015) (quotations omitted), *report and recommendation adopted*, 2015 WL 5330388, at *1 (Sept. 11, 2015).

   A.  Hourly Rate

   Turning first to the reasonable hourly rate, the Court first examines the experience and qualifications of counsel seeking the fee award.  In determining the lodestar, courts "should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Simmons v. N.Y.C. Transit Auth*., 575 F.3d 170, 174 (2d Cir. 2009) (quotations omitted).  "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Diaz v. Rene French Cleaners, Inc*., No. 20-CV-3848, 2022 WL 4646866, at *13 (E.D.N.Y. Aug. 29, 2022) (quotations omitted), *report and recommendation adopted*, 2022 WL 4662247, at *1 (Sept. 30, 2022).  "The burden is on the party moving for attorney's fees to justify the hourly rates sought." *Brown v. Green 317 Madison, LLC*, No. 11-CV-4466, 2014 WL 1237448, at *5 (E.D.N.Y. Feb. 4, 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)), *report and recommendation adopted*, 2014 WL 1237127, at *1 (Mar. 25, 2014).  That is, "the fee applicant [has the burden] to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill,

experience, and reputation." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *see also Farbotko v. Clinton County*, 433 F.3d 204, 208 (2d Cir. 2005) ("The relevant community . . . is the district in which the court sits.").

Jeffrey Robert Maguire of Stevenson Marino LLP represents Castillo and seeks attorney's fees for himself.  (Mem. of Law at 22; Decl. of Jeffrey R. Maguire dated Aug. 8, 2023 ("Maguire Decl."), Dkt. No. 29-2 ¶¶ 45–51).[13]  Mr. Maguire is a partner at Stevenson Marino and requests an hourly rate of $400.  (Mem. of Law at 22).  He routinely bills at a rate of $500 per hour.  (Maguire Decl. ¶ 50).  Mr. Maguire joined the firm in 2020 and has practiced employment law, including wage and hour cases, for almost fifteen years.  (*See id.* ¶¶ 45–47).  The Court finds that it is appropriate to award him an hourly rate within the range of that awarded to partners in this district.  As such, the Court awards Mr. Maguire the requested hourly rate of $400.  *See, e.g.*, *Godwin v. Buka N.Y. Corp.*, No. 20-CV-969, 2021 WL 612336, at *13 (E.D.N.Y. Feb. 17, 2021) (finding $400 per hour a reasonable hourly rate for experienced attorneys in connection with a FLSA default in the Eastern District), *report and recommendation adopted*, 2021 WL 1026553, at *1 (Mar. 17, 2021).

B. Hours Expended

Turning to the reasonableness of time expended, courts look to the contemporaneous time records of the attorneys.  The Second Circuit requires that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . document the application with contemporaneous time records." *N.Y. State Ass'n for Retarded*

---

[13] Two other attorneys from Stevenson Marino LLP—Justin R. Marino and J.R. Stevenson—also worked on this matter by "review[ing] . . . all pleadings, motion papers, and discussions of litigation strategy."  (Maguire Decl. ¶¶ 37, 42).  Plaintiff is not requesting attorney's fees for Mr. Marino or Mr. Stevenson.  (*Id.* ¶¶ 38, 44).

*Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  Those records "should specify, for each attorney, the date, the hours expended, and the nature of the work done."  *Id.*  To be contemporaneous, the time records "must be made . . . while the work is being done or . . . immediately thereafter."  *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 249 (S.D.N.Y. 2010).  "Descriptions of work recollected in tranquility days or weeks later will not do."  *Id.*  "The contemporaneous time records requirement is strictly enforced[.]"  *Valentine v. Aetna Life Ins. Co.*, No. 14-CV-1752, 2016 WL 4544036, at *7 (E.D.N.Y. Aug. 31, 2016).

"[C]ourts are . . . expected to take into account their own familiarity and experience both 'generally' and with the particular case at hand, rather than attaining 'exactitude' with respect to each individual billing entry."  *Concrete Flotation Sys., Inc. v. Tadco Constr. Corp.*, No. 07-CV-319, 2010 WL 2539771, at *7 (E.D.N.Y. Mar. 15, 2010) (citing *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)), *report and recommendation adopted*, 2010 WL 2539661, at *1 (June 17, 2010).  "The court must assess whether the hours expended by plaintiff's counsel were reasonable, and exclude any hours that were excessive, redundant, or otherwise unnecessary to the litigation."  *See Nuriddinov v. Masada III, Inc.*, No. 15-CV-5875, 2017 WL 9253401, at *12 (E.D.N.Y. July 24, 2017), *report and recommendation adopted*, 2018 WL 1251335, at *1 (Mar. 12, 2018).  Courts have "the authority to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application."  *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (quotations omitted).

Counsel submitted contemporaneous billing records showing the legal services rendered for work performed, including the dates that the services were provided, the amount of time during which services were provided, and a brief description of each

task performed.  (*See* Billing Records ("Billing Records"), attached as Ex. 7 to Default J. Mot., Dkt. No. 29-9).  According to the billing records submitted, Mr. Maguire spent a total of 36.99 hours on this case.  (*Id.* at 7; Mem. of Law at 23).  The Court finds these hours excessive and unnecessary and recommends an across-the-board percentage cut.

A reduction is warranted because the hours requested include time spent correcting the attorney's own mistakes.  *See, e.g.*, *Nuriddinov*, 2017 WL 9253401, at *12 (reducing fees because some portion of the work would have been unnecessary had counsel properly pled in the original complaint); *see also Payamps v. M&M Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2019 WL 8381264, at *16–*17 (E.D.N.Y. Dec. 9, 2019), *report and recommendation adopted*, Order (Mar. 31, 2020).  For example, counsel includes hours spent drafting a second motion for default judgment, (Billing Records at 1–2), actions that were only necessary because counsel had failed to comply with Local Civil Rule 55.2.  (First Default J. Order at 3).  And although Plaintiff identifies cases where higher hours award have been approved, *see, e.g.*, *Janus v. Regalis Constr., Inc.*, No. 11-CV-5788, 2012 WL 3878113, at *13 (E.D.N.Y. July 23, 2012) (approving 70.2 hours in an FLSA default case), the Court disagrees with counsel's characterization that "[c]ourts have generally found fewer than 100 hours to be a reasonable amount of time to have spent on an FLSA/NYLL default action."  (Mem. of Law at 22).  Rather, 36.99 hours exceeds the number of hours regularly approved in FLSA and NYLL default judgment cases.  *See, e.g.*, *Leon v. Chen*, No. 16-CV-480, 2017 WL 1184149, at *10 (E.D.N.Y. Mar. 29, 2017) (finding that 13.51 hours was reasonable in a FLSA/NYLL default judgment motion); *Zhang v. Red Mountain Noodle House, Inc.*, No. 15-CV-628, 2016 WL 4124304, at *7 (E.D.N.Y. July 4, 2016) (approving total of 22.1

hours in default judgment FLSA case), *report and recommendation adopted*, 2016 WL 4099090 (Aug. 2, 2016).

In light of the unnecessary hours spent and excessive amount of hours requested for a FLSA default judgment case, the Court recommends that the total amount of hours be reduced by 10% across the board. This results in the following fee calculations, based upon the adjusted hourly rates:

|  | **Mr. Maguire** |
|---|---|
| **Requested Billing Rate** | $400.00 |
| **Awarded Billing Rate** | $400.00 |
| **Requested Hours Billed** | 36.99 |
| **10% Reduction in Hours** | 33.29 |
| **Attorney's Fees** | **$13,316.00** |

The Court recommends that a total of $13,316.00 be awarded in attorney's fees.

C. <u>Costs</u>

Counsel also seeks reimbursement for $992.41 in costs consisting of $402 in court filing fees, $379.00 in service of process costs, $7.41 in postage, and $204 in fees for investigative services related to the Servicemembers Civil Relief Act. (Mem. of Law at 24; Costs Entries ("Costs Entries"), attached as Ex. 8 to Default J. Mot., Dkt. No. 29-10 at 1). Under both FLSA and NYLL, a prevailing plaintiff is entitled to recover costs from the defendant. *See* 29 U.S.C. § 216(b); NYLL § 663(1). Ordinarily, plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying." *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008). Only those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable. *Moon v. Gab Kwon*, 99-CV-11810, 2002 WL 31512816, at *8 (S.D.N.Y. 2002) (quoting *Kuzma v. IRS*, 821 F.2d 930, 933–34 (2d Cir. 1987)).

Castillo has submitted invoices as evidence for each of the requested costs.

(Costs Entries).  The filing fees are also supported by the docket entry that indicates that the filing fee was paid.  (Dkt. No. 1); *see, e.g.*, *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (holding that filing fees are recoverable without supporting documentation if verified by the docket).  However, although Castillo supported her claim for $204 in investigative services fees with an invoice, (Costs Entries at 2), investigative fees are generally not considered costs.  *See J&J Sports Prods., Inc. v. Garcia*, No. 06-CV-4297, 2011 WL 1097538, at *6 (S.D.N.Y. Mar. 1, 2011) ("28 U.S.C. § 1920 . . . [does not] expressly provide[] for the award of investigative fees[.]"), *report and recommendation adopted*, 2011 WL 1046054, at *2 (Mar. 22, 2011); *see also* Local Civ. R. 54.1(c).  And even if these fees were included as costs, an invoice alone—devoid of information on the investigator's qualifications or the reasonableness of the fees—would be an insufficient basis to support the award of these fees.  The Court deems these costs, with the exception of the $204 for investigative fees, to be reasonable.  The Court thus recommends that Castillo be awarded $788.41 in costs.

<u>CONCLUSION</u>

For the reasons stated above, it is respectfully recommended that default judgment be entered against Defendants and Castillo be awarded:

- $20,640.00 in unpaid minimum wages;

- $76,755.28 in unpaid overtime wages;

- $97,395.28 in liquidated damages;

- $10,000 in Wage Theft Prevention Act damages;

- Pre-judgment interest in the amount of $24.02 per day between April 6, 2019 and the day judgment is entered;

- Post-judgment interest in an amount to be calculated by the Clerk of Court pursuant to 28 U.S.C. § 1961(a);

- $13,316.00 in attorney's fees;

- $788.41 in costs.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report.  Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

Castillo is directed to serve a copy of this Report and Recommendation on Defendants and file proof of such service on the docket.

SO ORDERED.

*/s/ Sanket J. Bulsara* February 16, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

27